**Burton M. ABRAMS and Marguerite M. Abrams, Plaintiffs-Appellants,**

v.

**INTERCO INCORPORATED, Defendant-Appellee.**

**No. 1450, Docket 83–7151.**

United States Court of Appeals, Second Circuit.

Argued June 13, 1983.

Decided Sept. 28, 1983.

Richard M. Meyer, New York City (Arthur Wyler Mercado, Milberg Weiss Bershad Specthrie & Lerach, Thomas Farrell, and Gold, Farrell & Marks, New York City, of counsel), for plaintiffs-appellants.

Erwin C. Heininger, Chicago, Ill. (Scott J. Davis, Joel I. Riff, Mayer, Brown & Platt, Chicago, Ill., Howard I. Rhine, Kramer, Coleman & Rhine, New York City and Keith F. Mattern, Stephen Miller, Interco Incorporated, St. Louis, Mo., of counsel), for defendant-appellee.

Before FRIENDLY, KEARSE and CARDAMONE, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal in a private antitrust action for treble damages in the District Court for the Southern District of New York for illegal price-fixing raises two principal questions. One is whether the District Court properly denied the certification of a class consisting of all persons throughout the nation who bought any of defendant's products in the four years preceding the filing of the complaint, 93 F.R.D. 331 (1981). The other is whether the court erred in entering judgment dismissing the complaint for lack of a justiciable case or controversy, subject to plaintiffs' right to appeal the denial of class certification, when defendant tendered three times the amount of plaintiffs' purchases and agreed to pay reasonable attorneys' fees. Before addressing these questions we must determine, although the issue has not been raised by the parties, whether the judgment lacks the finality required by 28 U.S.C. § 1291 until attorneys' fees are fixed.

### The Facts and the Proceedings in the District Court

Interco, Inc., a manufacturer of Florsheim shoes, Thayer McNeil shoes, London Fog raincoats, and scores of other items of men's, women's and children's footwear and wearing apparel, entered into a provisional consent agreement with the Federal Trade Commission on July 13, 1978, requiring it to cease engaging in a variety of alleged price-fixing activities. 43 Fed.Reg. 31345 (1978). The agreement, which contained the usual disclaimer of admission of violation of law, concerned Interco's dealings with independent retailers that sold its products, including over 7,800 independent retail shoe stores. The agreement and the order subsequently issued did not affect Interco's practices in its more than 650 owned or leased shoe stores and shoe departments.

Plaintiff Burton M. Abrams is an attorney, with experience in the conduct of class actions, and has other business interests. On July 20, 1978, he and his wife filed a complaint in the District Court for the Southern District of New York on behalf of a class consisting of all purchasers of Interco products throughout the nation over the previous four years. Plaintiffs were able to establish that they had purchased nine pairs of defendant's shoes, all from Interco-owned stores in New York, at a total purchase price of $408.10. Count One of their complaint, which tracked the draft complaint of the Federal Trade Commission that had been attached to the agreement, alleged that Interco had violated § 1 et seq. of the Sherman Act, 15 U.S.C. § 1 et seq., by "entering into combinations, agreements, or understandings" with retail outlets ("dealers") not owned or leased by Interco to adhere to prices and sale periods; by "withholding allowances or other benefits" from dealers who sold Interco's products at lower prices; by "urging, inducing, persuading, compelling, or coercing" dealers to charge Interco's established prices and ultimately "terminating" dealers who refused; by "granting rebates, credits, benefits, or allowances" to dealers who sold at established prices; and by various other "direct or indirect" means. Count Two alleged that Interco sold only to dealers who agreed not to sell goods of any of Interco's competitors, and Count Three alleged that Interco discriminated among dealers. The complaint sought a judgment declaring the action to be a proper class action, requiring defendant to pay plaintiffs and the class they represented three times the damages incurred as a result of the alleged wrongs, and awarding the reasonable expenses of the action including attorneys' fees.

On April 17, 1980, the district court dismissed Counts Two and Three on the ground that plaintiffs, as retail customers, lacked standing to allege antitrust violations directed against Interco's competitors and dealers. Plaintiffs do not appeal this ruling. On October 15, 1980, more than two years after filing the complaint, plaintiffs moved for class certification. Nearly one more year passed before the district court denied the motion on September 16, 1981, 93 F.R.D. 331. In all this time plaintiffs had made no effort to pursue discovery either on the feasibility of class certification or on the merits of their claims.

Thereafter, on February 17, 1982, Interco offered to allow that judgment be taken against it in the sum of $1,224.30, three times the amount of plaintiffs' purchases from Interco over the four years preceding the filing of the complaint, together with costs and reasonable attorneys'

fees.[1] The offer provided that it was "not to be construed either as an admission that the defendant is liable in this action, or that the plaintiffs have suffered any damages". Plaintiffs rejected the offer for three reasons. First, they contended that the unspecified "reasonable attorney's fee" would almost certainly be calculated as some fraction of the amount recovered, and therefore would not compensate their counsel for time charges already amounting to more than twenty times Interco's offer. Second, they argued that the amount offered was undoubtedly more than any damages they would individually recover after trial, with the result that acceptance of the offer would create the appearance that the named plaintiffs were willing to benefit themselves at the expense of the class they had sought to represent. Finally, plaintiffs expressed doubt whether the issue of class certification could be preserved for appeal unless the offer was refused and judgment was entered over their objection. Interco thereupon moved for dismissal under Fed.R. Civ.P. 12(b)(1) on the ground that no justiciable case or controversy remained. The district court granted the motion on October 19, 1982, ordered the parties to settle a judgment, and provided that if they could not agree on the attorneys' fees, the court would fix them. Judgment dismissing the complaint was entered on January 28, 1983, without agreement on the subject of attorneys' fees; it expressly preserved plaintiffs' right to appeal from the denial of class certification. Before the district court had determined a reasonable fee award, plaintiffs appealed to this court from the order of dismissal and the previous order denying class certification.

### Finality of the Judgment

Under *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), and *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 336–40, 100 S.Ct. 1166, 1173–1175, 63 L.Ed.2d 427 (1980), denial of class certification is appealable as a matter of right only after the entry of final judgment. Although the point has not been raised by the parties, we must nevertheless consider whether dismissal of plaintiffs' action prior to the determination of the amount of attorneys' fees to be awarded constitutes such a judgment.[2]

While we have held that where reasonable attorneys' fees are a contractually specified element of damages, a judgment on the merits failing to set the amount of the fees is not a final judgment, *Aetna Casualty & Surety Co. v. Giesow,* 412 F.2d 468, 470 (2 Cir.1969); *Union Tank Car Co. v. Isbrandtsen,* 416 F.2d 96, 97 (2 Cir.1969) (per curiam), we suggested in dictum in *Cinerama, Inc. v. Sweet Music, S.A.,* 482 F.2d 66, 69–70 & n. 2 (2 Cir.1973), that failure to fix the amount of attorneys' fees allowable as a matter of judicial discretion would not deprive a judgment on the merits of finality, even when the fees will constitute an additional burden on the defendant rather than come out of a fund. That approach was rejected in *Johnson v. University of Bridgeport,* 629 F.2d 828, 829–30 (2 Cir.1980) (per curiam), at least in cases, such as this one, in which attorneys' fees have been authorized by statute, see 15 U.S.C. § 15, and were part of the relief sought in the complaint, although the court thought the question to be "very close". Other courts of appeals held that judgments determining liability and damages were final and appealable although the district court had not yet fixed an additional amount payable as attorneys' fees. See, e.g., *Hidell v. International Diversified Investments,* 520 F.2d 529, 532 n. 4 (7 Cir.1975) (per curiam); *Memphis Sheraton Corp. v. Kirkley,* 614 F.2d 131, 133 (6 Cir.1980); *Obin v. District No. 9 of Int'l Ass'n of Machinists,* 651 F.2d 574, 582–84 (8 Cir.1981). In contrast, the Fifth and Third

1. The offer purported to be made under Fed.R. Civ.P. 68. This, in its ordinary application, contemplates a situation where the amount of the plaintiff's recovery is uncertain and affords the defendant a means of inducing settlement. *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981). However, the Rules in no way preclude a defendant from offering more than the plaintiff could possibly obtain from litigation.

2. Question with respect to the finality of such judgments has arisen in two different but related contexts. One is that presented here, namely, whether the judgment is final so as to permit, and presumably to require, immediate appeal under 28 U.S.C. § 1291. The other is whether a request for attorneys' fees must be filed within the ten day period stipulated by Fed.R.Civ.P. 59(e) for motions to amend the judgment. Both questions turn on whether the fixing of attorneys' fees is "collateral" to the judgment or an integral part of it. If attorneys' fees are regarded as "collateral", the judgment is final and appealable and a request for attorneys' fees does not seek an amendment of it.

Circuits considered that a judgment on the merits was not final prior to the determination of the amount of attorneys' fees. *Williams v. Ezell,* 531 F.2d 1261, 1263 (5 Cir. 1976); *Croker v. Boeing Co.,* 662 F.2d 975, 983–84 (3 Cir.1981) (en banc). The difference of opinion was natural in light of the opposing policy considerations. Allowing immediate appeal, usually by the defendant, may eliminate the need for what may be a long proceeding with respect to the amount of attorneys' fees if the judgment is reversed; it will also permit the district court to fix the fees for the trial and the appeal in one proceeding if the judgment is affirmed. On the other hand, postponing the finality of the judgment will allow the court of appeals to decide the issues on the merits and with respect to attorneys' fees in one appeal rather than two.

■ However these considerations might be balanced, we consider that the question has now been settled in favor of immediate appealability by *White v. New Hampshire Dep't of Employment Security,* 455 U.S. 445, 452 n. 14, 102 S.Ct. 1162, 1167 n. 14, 71 L.Ed.2d 325 (1982). Although the case involved the Rule 59(e) problem, see note 2 *supra,* the Court noted with apparent approval the position of the Sixth, Seventh and Eighth Circuits that "decisions on the merits may be 'final' and 'appealable' prior to the entry of a fee award". The Court based its holding that the 10-day limitation in Fed.R.Civ.P. 59(e) did not apply to post-judgment requests for attorneys' fees under 42 U.S.C. § 1988 in part on this view that "the collateral character of the fee issue establishes that an outstanding fee question does not bar recognition of a merits judgment as 'final' and 'appealable'." *Id.* The Third Circuit has since held that the *White* decision overrules its holding in *Croker, supra,* 662 F.2d at 983–84, that a judgment is not appealable until statutory attorneys' fees have been set, *Halderman v. Pennhurst State School & Hospital,* 673 F.2d 628, 644 & n. 1 (3 Cir.1982) (en banc, on petition for rehearing), *cert. granted,* 457 U.S. 1131, 102 S.Ct. 2956, 73 L.Ed.2d 1348, *restored to calendar for reargument,* —— U.S. ——, 103 S.Ct. 3568, 77 L.Ed.2d 1409 (1983). Two other Courts of Appeals have also followed the reasoning in *White* by holding that

judgments on the merits are appealable although statutory attorneys' fees have not been determined, *Cox v. Flood,* 683 F.2d 330, 331 (10 Cir.1982); *American Re-Insurance Co. v. Insurance Comm'r of California,* 696 F.2d 1267, 1268 (9 Cir.1983). Although the Fifth Circuit has endeavored to reconcile its prior holdings of nonappealability with *White,* see *Holmes v. J. Ray McDermott & Co.,* 682 F.2d 1143, 1146 (5 Cir.1982), we consider, as the Third Circuit has done under similar circumstances, see *Halderman, supra,* 673 F.2d at 644, that our holding in *Johnson v. University of Bridgeport* that a judgment for the plaintiff on the merits does not become final under 28 U.S.C. § 1291 until statutory attorneys' fees are fixed can no longer stand in the light of *White.* Indeed we have already stated in a related context, "[i]n *White,* the court made clear that an award of attorney's fees is independent of final judgment; consequently, the need to determine a fee award should in no way affect the requirement that a judgment be entered promptly under Fed.R.Civ.P. 58", *Goodman v. Heublein, Inc.,* 682 F.2d 44, 47 (2 Cir.1982). See also *Hastings v. Maine-Endwell Central School Dist.,* 676 F.2d 893, 896 (2 Cir.1982); *Cheng v. GAF Corp.,* 713 F.2d 886 at 889 (2 Cir.1983); *McGill v. Secretary of Health and Human Services,* 712 F.2d 28 at 29 (2 Cir.1983). The reasoning in *White,* what is now the almost uniform course of decision in other courts of appeals, our own statements after the *White* decision and the desirability of a bright line rule applicable both to Fed.R.Civ.P. 59(e), which is clearly governed by *White,* and to § 1291, compel us to hold that a judgment on the merits in favor of a plaintiff is a final judgment under 28 U.S.C. § 1291 even though statutory attorneys' fees remain undetermined.

### Denial of Class Certification

Correctly anticipating that Interco would adopt the favorite stance of appellees in cases where class action status has been denied, namely, to insist that the denial can be reversed only for an abuse of discretion, plaintiffs begin their brief by asserting that this is not the proper standard of review in the instant case. They concede that abuse of discretion is the appropriate standard in

*Per contra,* if the attorneys' fees are regarded as integral, the judgment is not yet final and appealable and a party requesting attorneys' fees is seeking an amendment. At least this is

our reading of *White v. New Hampshire Dep't of Employment Security,* 455 U.S. 445, 452–53 & n. 14, 102 S.Ct. 1162, 1166–1167 & n. 14, 71 L.Ed.2d 325 (1982).

some instances of denial of class certification, e.g., when the denial is based on a determination of the individual's inadequacy as a class representative, as in *Brick v. CPC Int'l, Inc.,* 547 F.2d 185, 187 (2 Cir. 1976), or on a desire to avoid duplicative class actions, as in *Becker v. Schenley Indus., Inc.,* 557 F.2d 346, 348 (2 Cir.1977). They likewise accept abuse of discretion as the appropriate standard when, because of the defendants' willingness to comply with an injunction obtained at the suit of individual plaintiffs, class certification would be largely a formality, e.g., *Forts v. Ward,* 621 F.2d 1210, 1217–18 (2 Cir.1980). However, they cite to *Norwalk CORE v. Norwalk Redevelopment Agency,* 395 F.2d 920, 937 (2 Cir.1968), as showing that an appellate court will go behind a denial of class status on the ground that there were no common questions of law or fact when it found that the district court had misread the complaint, to *Marcera v. Chinlund,* 595 F.2d 1231, 1237 (2 Cir.1979), *vacated on other grounds,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979), as showing that an appellate court will reverse without resort to abuse of discretion language if it finds that "the district judge has misconceived both the nature of the . . . issues and the appropriate procedural response", and to *Matthies v. Seymour Manufacturing Co.,* 270 F.2d 365, 373 (2 Cir.1959), *cert. denied,* 361 U.S. 962, 80 S.Ct. 591, 4 L.Ed.2d 544 (1960), as showing that an appellate court will engage in free review of a class action determination where the facts underlying key determinative issues, there a question of numerosity, are as available to it as they were to the district court. Against this Interco maintains that "[t]he decision whether class treatment is appropriate is inherently factual, and therefore is one in which great discretion should be given to district courts", particularly "in cases, such as this one, in which the district court is concerned with whether the case would be manageable as a class action", see Fed.R. Civ.P. 23(b)(3)(D). It cites *Windham v. American Brands, Inc.,* 565 F.2d 59, 65 (4 Cir.1977) (en banc), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978), as "dispositive of plaintiff's argument".

■ We would put the matter somewhat differently than does either side. It is not inconsistent with the discretion standard for an appellate court to decline to honor a purported exercise of discretion which was infected by an error of law.[3] Once cases of this sort are eliminated, it does no particular harm to say that the district court's denial or grant of class action status will be reversed only for "abuse of discretion" so long as we understand that this standard itself is flexible. See *United States v. Criden,* 648 F.2d 814, 817–19 (3 Cir.1981); *Friendly, supra* note 3, at 762–73. Abuse of discretion can be found far more readily on appeals from the denial or grant of class action status than where the issue is, for example, the curtailment of cross-examination or the grant or denial of a continuance. The courts have built a body of case law with respect to class action status. See 6 Newberg, Class Actions 7–139 (1977 & 1983 Supp.) (class action decisions checklist). While no two cases will be exactly alike, a court of appeals can no more tolerate divergence by a district judge from the principles it has developed on this subject than it would under a standard of full review—and this even though the district judge has adduced what would be plausible grounds for his ruling if the issue were arising for the first time. Except to the extent that the ruling is based on determinations of fact and is thus protected by Fed.R.Civ.P. 52(a) or where the trial judge's experience in the instant case or in similar cases has given him a degree of knowledge superior to that of appellate judges, as often occurs, review of class action determinations for "abuse of discretion" does not differ greatly from review for error. As the Fourth Circuit has stated in another area said to be governed by an abuse of discretion standard, "[a] judge's discretion is not boundless and must be exercised within the applicable rules of law or equity." *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 193 (4 Cir.1977) (Craven, J.). See also *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–2568, 45 L.Ed.2d 648 (1975); *Gulf Oil Co. v. Bernhard,* 452 U.S. 89, 100–01, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981).

**3.** Compare the analogous exception to the discretion standard with respect to the grant or denial or temporary injunctions. See Friendly, *Indiscretion About Discretion,* 31 Emory L.J. 747, 776 (1982). As there pointed out, the appellate court on finding such an error generally will not simply remand to the district court but will act on its own. *Id.* at 776–77 & n. 110.

Under Fed.R.Civ.P. 23(b)(3) an action may be maintained as a class action only if

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

One of "[t]he matters pertinent to the findings" is "the difficulties likely to be encountered in the management of a class action."

The district court stated that although Interco had raised several arguments in opposition to class certification, it was necessary to discuss only one, namely, that individual issues of fact would greatly predominate over common issues, thereby interposing severe difficulties in the management of the class action. The court said that certification might have been appropriate if the case had involved "some pattern of conduct on Interco's part which was reasonably consistent, affecting all or most of the dealers referred to in the complaint", 93 F.R.D. at 332. The court determined, however, that "it is abundantly clear from the complaint that plaintiffs have no such claim in mind", *id.* By alleging a conspiracy with some dealers, coercion of others, and bribery of still others, the plaintiffs had "raise[d] issues relating to Interco's individual relationships with each of its thousands of dealers", *id.* The court thought that "[a]lthough it would be reasonable to construe the allegations about suggested price lists as claiming conduct by Interco affecting all its dealers in common, this allegation is barely a start at making out the alleged claim of antitrust violation." It therefore held that individual issues of fact would predominate over common issues and "severe difficulties" would arise in the management of the suit as a class action.

The theory of the complaint was that Interco had emerged from the safe harbor provided by *United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919), for a manufacturer "freely to exercise his own independent discretion as to parties with whom he will deal" and to "announce in advance the circumstances under which he will refuse to sell," even when the objective is retail price maintenance, and had passed into seas governed by the rule of *United States v. Parke, Davis & Co.,* 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), with respect to manufacturers who do something more. See Sullivan, The Law of Antitrust 392–99 (1977); 1 Handler, Twenty-Five Years of Antitrust 360–72, 444–48 (1973). Evidently not knowing what Interco had in fact done, plaintiffs alleged 14 different "acts or practices" by Interco, only some of which, as plaintiffs admitted, would individually constitute illegal price fixing. In a suit by the United States for an injunction or a proceeding by the FTC for a cease and desist order against vertical price fixing, it is usually not necessary to determine how broad a showing the Government or the FTC must make, in view of the established doctrine that an injunction or a cease and desist order can go beyond the precise violations shown. *International Salt Co. v. United States,* 332 U.S. 392, 400–01, 68 S.Ct. 12, 17–18, 92 L.Ed. 20 (1947); *United States v. United States Gypsum Co.,* 340 U.S. 76, 88–89, 71 S.Ct. 160, 169–170, 95 L.Ed. 89 (1950). In the typical suit for damages for vertical price fixing, an action by a terminated dealer, see Sullivan, *supra,* 394–95, the inquiry as to the scope of the defendant's activities likewise can usually be quite restricted. See, e.g., *Albrecht v. Herald Co.,* 390 U.S. 145, 148–50 & n. 6, 88 S.Ct. 869, 870–872 & n. 6, 19 L.Ed.2d 998 (1968).

An action for damages on behalf of purchasers of scores of different products throughout the nation is a different story. Although the Supreme Court has stated that treble damages actions for price fixing by a nationwide class of retail purchasers are not barred on the ground that the plaintiffs had not been injured in their "business or property", *Reiter v. Sonotone Corp.,* 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979), the Court emphasized the broad power and discretion vested in the courts by Fed.R.Civ.P. 23 "with respect to matters involving the certification and management of potentially cumbersome ... class actions". 442 U.S. at 345, 99 S.Ct. at 2334. A member of the class is not entitled to recover unless the defendant engaged in wrongful conduct with respect to him. We do not have to go so far as Interco would have us, namely, to hold that in order to support damage recovery by a nationwide class plaintiffs would be obliged to show conduct by Interco violating *Parke Davis* with re-

spect to each of its 3500 dealers; proof of patterns of conduct or frequent practices would justify, at least in the absence of rebuttal, an inference that these were general. See *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 53–54 (2 Cir.1980) (action by terminated dealer). Still there is force in Interco's argument that "[p]roof that a dealer in Brooklyn adhered to Interco's suggested resale prices would not show that a dealer in California similarly adhered, and proof that a dealer in Texas was threatened with adverse consequences would not show that a dealer in Minnesota was similarly threatened." (Brief, pp. 14–15). See *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 691 F.2d 1335, 1343 (9 Cir.1982). The strength of this point is augmented by the fact that the class which plaintiffs sought to have certified was not limited to purchasers of Florsheim and Thayer-McNeil shoes but included purchasers of scores of other product lines.

Plaintiffs respond that discovery might unearth evidence of violations of *Parke Davis* which would justify the inference that Interco had engaged in nationwide price fixing, at least with respect to certain product lines. This argument encounters the difficulty that, during the two years and three months between the filing of the complaint and the motion for class certification, plaintiffs never sought discovery to support their anticipated motion, as they might readily have done. *Windham v. American Brands, Inc., supra,* 565 F.2d at 64 & n. 5; *Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library,* 586 F.2d 962, 966 (2 Cir.1978). Neither did they withhold the motion for class certification until after discovery on their individual claims. We see no reason why plaintiffs should be relieved of the consequences of their considered strategy when they failed to achieve class certification in advance of burdensome discovery.

■ Although the district court did not specify its reasons for thinking the case would be unmanageable as a class action so clearly as would have been desirable, these are apparent. The first is the difficulty in complying with the requirement of Fed.R. Civ.P. 23(c)(2) that, in a class action main-

tained under Rule 23(b)(3), as this one is, "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." We need not elaborate on the Supreme Court's interpretation of this in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*Eisen IV*), beyond stating its holdings that when members of the class can be identified through reasonable effort, individual notice is required, and that the expense of sending the notice must be paid by the plaintiffs no matter how disproportionate this would be to their prospective individual recoveries. Here the initial question would be how far the class members could be identified. An affidavit submitted by Interco stated that in the years 1974–78, total orders for Florsheim shoes alone amounted to 31,733,209 pairs, which on the assumption of two pairs per customer per year, would equate to 3,173,000 purchasers. The record does not inform us how these would divide between purchasers from Interco stores and purchasers from dealers. It likewise does not inform us how far records of such purchasers exist, but experience tells us that some merchants retain records at least of the names and addresses of recent purchasers. Although Interco would be able to search its own records "with less difficulty or expense than could the representative plaintiff", *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 356, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), and thus might be required to do this, *id.,* the district court may determine who shall pay the expense of ascertainment subject to the caution that it "must not stray too far from the principle underlying *Eisen IV* that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action." *Id.* at 359, 98 S.Ct. at 2393.[4] Yet plaintiff Burton M. Abrams, an attorney experienced in class actions, had given no thought to the question of notice beyond a view that "if the courts have created a remedy to the consumer, the courts will also assist in working out the notification problem and bringing the class within an area to which notice can be given, whether it be by newspaper or radio publicity." (A–49). This ignores that, as the Supreme Court

---

4. We need not consider whether Rule 23(c)(2) would require an endeavor to ascertain purchasers from the non-party dealers. See *In re*

*Franklin National Bank Securities Litigation,* 574 F.2d 662, 667–68 (2 Cir.1978), *on petition for rehearing,* 599 F.2d 1109 (2 Cir.1979).

was at pains to point out in *Eisen IV* and again in *Reiter v. Sonotone Corp., supra,* 442 U.S. at 345, 99 S.Ct. at 2334, courts operate under the strictures of Rule 23.

An even more serious problem of manageability relates to damages. Each member of the class would be entitled not to a refund of three times what he or she paid [5] but rather three times the amount by which such payment exceeded the prices that would have prevailed in a free market. Such determination would be complicated by the scores of different products involved, varying local market conditions, fluctuations over time, and the difficulties of proving consumer purchasers after a lapse of five or ten years. See *City of Philadelphia v. American Oil Co.*, 53 F.R.D. 45, 72–74 (D.N.J.1971); *Holland v. Goodyear Tire & Rubber Co.*, 75 F.R.D. 743, 748–50 (N.D. Ohio 1975); *Mekani v. Miller Brewing Co.*, 93 F.R.D. 506, 511 (E.D.Mich.1982). As said in a leading treatise, 2 Areeda & Turner, Antitrust Law: An Analysis of Antitrust Principles and Their Application § 332c at 157 (1978):

> The damage issue turns out to be a major stumbling block for class actions. The evidence establishing damages usually varies from class member to class member.... Even the necessity of individual trials on damages may be fatal if the class numbers in the thousands or millions. Individual litigations in such cases would be clearly infeasible, but the courts will not permit class actions unless they can devise a practical means for their litigation.

The only way that has been suggested to avoid this dilemma, the "fluid" class recovery, has not found favor in this circuit, *Eisen v. Carlisle & Jacquelin (Eisen III),* 479 F.2d 1005, 1016–18 (2 Cir.1973) (Medina, J.);[6] *Van Gemert v. Boeing Co.,* 553 F.2d 812, 815–16 (2 Cir.1977); or elsewhere, *In re Hotel Telephone Charges,* 500 F.2d 86, 89– 90 (9 Cir.1974).

Plaintiffs argue that even if the district court did not abuse its discretion in refusing to certify the class named in the complaint, it should have certified a smaller class, suggested in plaintiffs' reply memorandum in support of the motion for class certification, to wit, all purchasers from Interco stores. We accept, at least arguendo, that the district judge should have considered this possibility, *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 408, 100 S.Ct. 1202, 1214, 63 L.Ed.2d 479 (1980), and it would have been better if he had addressed it expressly. However, his failure to do this may have been due to the fact that the modification would not have had so curative an effect as plaintiffs assume. Interco was indisputably entitled to charge any price that it pleased in its own stores. Any violation of § 1 of the Sherman Act by its maintaining such prices would have to be predicated upon proof that it could not feasibly have done this save by acts with respect to independent dealers that violated the *Parke Davis* principles. The proof needed to establish such violations nationwide and with respect to all types of products would not be materially less than what would be needed if the class included purchasers from dealers. See *In re Coordinated Pretrial Proceedings, supra,* 691 F.2d at 1343. The difficulties with respect to notice[7] and proof of damages would likewise remain staggering. The district court was under no obligation to exercise its own ingenuity to devise a manageable class limited to a single geographical area or product line, *Geraghty, supra,* 445 U.S. at 408, 100 S.Ct. at 1214. Here again plaintiffs are the victims of their own ambitions in seeking certification of a nationwide class of buyers of all Interco products.[8]

*Dismissal of the Complaint for Lack of a Justiciable Controversy*

It is useful to begin our discussion of the point indicated in the heading by

---

**5.** To the extent that existing records would permit accurate computation of this, the notice problem is augmented, as pointed out above.

**6.** The Supreme Court's review of Judge Medina's opinion, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), did not address this point. In affirming our en banc decision in *Van Gemert v. Boeing Co.,* 590 F.2d 433 (2 Cir.1978), the Court made clear that the case did not present the question of a "fluid class" recovery,

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 480– 81 n. 6, 100 S.Ct. 745, 750–751 n. 6, 62 L.Ed.2d 676 (1980).

**7.** While the number in the class would be less, purchasers from Interco stores are those most likely to be susceptible of identification through reasonable effort, and thus to be entitled to individual notice, Fed.R.Civ.P. 23(c)(2).

**8.** Plaintiffs' concerns that denial of class certification will jeopardize the rights of class mem-

rejecting any argument that the action of the district court was forbidden by *Deposit Guaranty National Bank v. Roper, supra,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427, on the contrary we think it is somewhat supported by that case. The defendant in *Roper* had endeavored to cut off the right of the individual plaintiffs to appeal the denial of class certification. See 445 U.S. at 329, 100 S.Ct. at 1169. The Court said, *id.* at 333, 100 S.Ct. at 1171:

> We can assume that a district court's final judgment fully satisfying named plaintiffs' private substantive claims would preclude their appeal on that aspect of the final judgment; however, it does not follow that this circumstance would terminate the named plaintiffs' right to take an appeal on the issue of class certification.

The Court went on to hold that plaintiffs' "continuing individual interest in the resolution of the class certification question in their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails" could not be extinguished by defendants' offer to pay plaintiffs' individual claims, *id.* at 336–37, 100 S.Ct. at 1173.

The situation here is quite different. Paragraph 6 of the judgment provided:

> Nothing in this judgment is intended to foreclose or limit the right of the plaintiffs to take an appeal from this Court's denial of class certification[;]

and we read the judgment to mean that if we were to reverse the denial of class certification, plaintiffs' individual claims would be reinstated. Plaintiffs have availed themselves of their right to appeal the denial of class certification, and, after full consideration, we have decided against them. Subject to possible review by the Supreme Court, which they are free to pursue, all that remains is their individual claims, for which Interco admittedly has offered to pay much more than plaintiffs could obtain by suit. Plaintiffs' interest in shifting part of the costs they have incurred in obtaining this recovery, on which the Supreme Court

relied in *Roper, supra,* 445 U.S. at 334 n. 6, 336, 100 S.Ct. at 1172, n. 6, 1173, has been terminated, subject only to possible Supreme Court review, by our decision that class action certification was properly denied. The case would thus seem to have become the hypothetical described in *Roper, supra,* 445 U.S. at 333, 100 S.Ct. at 1171, to wit, a "final judgment fully satisfying named plaintiffs' private substantive claims", and there is no justification for taking the time of the court and the defendant in the pursuit of minuscule individual claims which defendant has more than satisfied. The case is quite unlike one in which class certification has been granted and the defendant then seeks to oust the individual plaintiffs as representatives by paying their claims. See *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 752–57, 96 S.Ct. 1251, 1258–1260, 47 L.Ed.2d 444 (1976). The district court would thus seem to have exercised precisely the "broad power and discretion" with respect to class actions which the Court envisioned in *Sonotone, supra,* 442 U.S. at 345, 99 S.Ct. at 2334.

Plaintiffs are not aided by their doubts whether the district court will allow their attorneys a fee approximating the $30,000 of hourly time charges alleged to have accrued when Interco made its offer. Although Burton Abrams testified that the arrangements were for a contingent fee, so that plaintiffs need have no qualms if their attorneys suffer a loss, the district court is not limited in its award of fees to a percentage of the recovery. See, e.g., *Black Gold, Ltd. v. Rackwool Indus., Inc.,* 529 F.Supp. 272 (D.Colo.1981). Similarly plaintiffs' fears about the adverse effect of their accepting more than what they could have recovered on their individual claims upon their status as class representatives are fatuous if, as we have held, class action status was properly denied on the ground that the case did not meet the standards of Fed.R. Civ.P. 23(b)(3). In substance, what defendant did by its offer was no different (except in being more favorable to the plaintiffs) than if it had submitted to a default judgment on the individual claims.

Appellants say, however, that dismissal of the action is precluded by *Kline v. Wolf,* 702

F.2d 400 (2 Cir.1983), a decision rendered after the district court had acted. Appellants overread the *Kline* opinion.

The two individual plaintiffs in *Kline* had brought an action for securities fraud claiming damages of some $22,500, based on allegedly false representations in an annual report of Allied Artists Industries, Inc., issued in September 1978. They had moved to be designated as representatives of a class consisting of all purchasers of Allied stock from the issuance of the annual report until Allied's filing of a petition in bankruptcy in April 1979. Without questioning that the action would normally have been maintainable as a class action, the district court denied the motion on the ground that "both plaintiffs were vulnerable to serious attacks upon their credibility, and were thus subject to unique defenses atypical of the class of purchasers of Allied stock during the relevant period, which could 'divert attention from the substance of the basic claim' with the result that the 'remaining members of the class could be severely damaged by plaintiffs' representation of them' ", 702 F.2d at 401–02. It then entered judgment, in accordance with an offer by defendants, in favor of plaintiffs on their individual claims, with a proviso that this did not waive any rights of defendants in any other action. This court sustained the denial of class certification but reversed the entry of judgment in favor of plaintiffs against their will.

Recognizing "the interest of the [district] court in avoiding the waste of judicial resources that would occur if the plaintiffs failed to establish liability in their individual suit or, if successful in that suit, nevertheless failed upon reconsideration to obtain certification as class representatives," 702 F.2d at 404, the *Kline* court considered this to be outweighed by other circumstances.[9] One was the possibility of the plaintiffs'

"obtaining reconsideration of their adequacy as class representatives, to which they would have been entitled if they had established the defendants' liability after trial of the present case." 702 F.2d at 404. The other was that "[u]nder the conditional judgment entered by the district court the plaintiffs would probably be forced to pay over most if not all of their recovery to their counsel for services and disbursements in the action." *Id.* Neither of these factors is present here. Even if we were to indulge in the unlikely assumption that Mr. and Mrs. Abrams would pursue their individual damage claims, which could hardly have amounted to more than $300, even when trebled, and would succeed in that endeavor, there is no indication that such success would have supported certification of either of the classes they had proposed. While Fed.R.Civ.P. 23(c)(1) provides that an order with respect to class certification "may be altered or amended before the decision on the merits", a district court is not compelled to allow immensely burdensome pretrial and trial proceedings on individual claims which have themselves been mooted by a defendant's offer of payment simply on the chance that the evidence will show the possibility of devising a manageable class which plaintiffs had never proposed. The plaintiffs here had nearly three years before the judge's ruling in which to propose a suitable class, and failed to do so. Furthermore, as previously pointed out, there is no danger in this case, as there was in *Kline*, that plaintiffs' recovery on their individual claims will be diluted by payment of attorneys' fees. Whereas the *Kline* plaintiffs had the burden of paying their attorneys' fees, § 4 of the Clayton Act, 15 U.S.C. § 15, provides for the recovery of attorneys' fees in addition to the trebled damages. In this case, unlike *Kline*, the only interest surviving the correct denial of class certification and defendant's offer is not that of plaintiffs but of their attorneys. The inter-

---

**9.** The *Kline* opinion seemed to find objectionable a proviso in the judgment, similar to one in the judgment here on appeal, that entry of judgment against the defendants would have no *stare decisis* or collateral estoppel effect in other cases. However, we know of no principle that a plaintiff must be allowed to pursue litigation in which he no longer has an interest merely because this could benefit others. Even without the proviso, judgments like those in

*Kline* and here would have no preclusive effect in other cases under the accepted view that the decision of issues not actually litigated, e.g., a default judgment, has no preclusive effect in other litigation. Restatement of the Law of Judgments Second § 27 & comment e (1982); 1B Moore, Federal Practice ¶ 0.444[1] at 793–96 (1983); Note, Rule 68: A "New" Tool for Litigation, 1978 Duke L.J. 889, 904–05.

**34**

est of plaintiffs' attorneys in possible revision of the adverse class action determination through prosecution of plaintiffs' individual claims does not suffice to justify the enormous burdens this would place upon the court and the defendant[10] when class certification has been properly denied on a ground not shown to have any likelihood of susceptibility to cure. *Kline v. Wolf, supra,* is not to the contrary.

Affirmed.

10. Subsequent to the denial of class certification, plaintiffs served interrogatories and requests for production of documents on defendant seeking, *inter alia,* all documents relating to retail price maintenance, maintenance of minimum markups, discounting, termination of dealers, special promotions, and keystone markups, on all product lines and throughout the country for the entire claim period as well as all documents supplied, interviews conducted, and testimony taken in the FTC proceeding.