721 F.2d 625
 1983-2 Trade Cases 65,729
 Richard HEWITT and Kenneth A. Higgins, Jr., on behalf of
themselves and all others similarly situated,
Plaintiffs-Appellants,
v.
JOYCE BEVERAGES OF WISCONSIN, INC., a Delaware Corporation;
and Joyce Beverages of Illinois, Inc., a Delaware
Corporation, Defendants-Appellees.
 No. 83-1514.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 14, 1983.
Decided Nov. 28, 1983.
 
 John G. Jacobs, Plotkin & Jacobs, Ltd., Chicago, Ill., for plaintiffs-appellants.
 Paul E. Slater, Sperling, Slater & Spitz, P.C., Chicago, Ill., for defendants-appellees.
 Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and NEAHER, Senior District Judge.*
 ESCHBACH, Circuit Judge.
 
 
 1
 This case comes to us as an interlocutory appeal under 28 U.S.C. Sec. 1292(b). The issue sought to be presented in this appeal is whether a class action is appropriate where the plaintiffs intend to use proof of the defendants' coercive activities to demonstrate the unwilling participation of each plaintiff class member in the defendants' alleged resale price scheme. The district court, 97 F.R.D. 350, ruled that a class action was not appropriate. We now affirm that ruling.
 
 I.
 
 2
 Joyce Beverages of Wisconsin, Inc. and Joyce Beverages of Illinois, Inc. (collectively referred to as "Joyce") manufacture and distribute a variety of soft drinks in southwestern Wisconsin and, with the exception of the Chicago metropolitan area, all of Illinois. The named plaintiffs are ten former, independent, wholesale distributors of Joyce. They allege that Joyce had a scheme to fix the resale price of its products and that Joyce used coercion to ensure each distributor's compliance with this scheme.
 
 
 3
 The plaintiffs seek to pursue this antitrust action as a class action against Joyce on behalf of some 347 present and former Joyce distributors. In January, 1982, Judge Grady orally certified the case as a class action. Subsequently, the case was transferred to Judge Nordberg's calendar. Judge Nordberg, upon Joyce's motion to reconsider, then decertified the class and certified his ruling under 28 U.S.C. Sec. 1292(b) for an immediate interlocutory appeal.
 
 II.
 
 4
 We initially granted plaintiffs' Motion for Leave to Appeal by order dated March 17, 1983. On appeal, however, the defendants question whether Judge Nordberg's order satisfied the "in writing" requirement of Sec. 1292(b). If this requirement was not satisfied, then Judge Nordberg's order was improperly certified and we lack jurisdiction to hear the appeal. Before we can reach the merits of the interlocutory appeal, therefore, we must first determine whether plaintiffs' Motion for Leave to Appeal was improvidently granted. See Nuclear Engineering Co. v. Scott, 660 F.2d 241, 245 n. 7 (7th Cir.1981), cert. denied, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); Anschul v. Sitmar Cruises, Inc., 544 F.2d 1364, 1369 (7th Cir.1976), cert. denied, 429 U.S. 907, 97 S.Ct. 272, 50 L.Ed.2d 189 (1976).
 
 
 5
 We may hear an interlocutory appeal under Sec. 1292(b) only if two steps are completed. First, the district court must state in writing that it is of the opinion that its "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation ...." 28 U.S.C. Sec. 1292(b). Second, we must agree to accept the appeal. Id. At issue in this appeal is whether it is evident from the district court's writing that it was of the opinion that the statutory requirements of Sec. 1292(b) were satisfied.
 
 
 6
 In his order, Judge Nordberg stated that "the Court certifies the instant ruling for interlocutory appeal pursuant to section 1292(b)." The plaintiffs contend that this reference is sufficient to satisfy the "in writing" requirement. Strictly speaking, it does not. Merely stating that the ruling is certified "pursuant to section 1292(b)" may imply that the district court concluded an interlocutory appeal was appropriate, but, standing alone, it does not clearly demonstrate an actual belief by the district court that those specific statutory requirements were satisfied.
 
 
 7
 The defendants, on the other hand, assert that this court may accept an appeal only if the district court expressly tracks the language of Sec. 1292(b). This construction of the statute is too narrow.[1] We do not read Sec. 1292(b) as requiring a specific word-by-word reiteration of its statutory language.
 
 
 8
 Proper certification will be found where the district court tracks the language of Sec. 1292(b) or where it is otherwise evident on the face of the district court's written order that certification was intended and that the district court actually believed the statutory requirements were fulfilled. While Judge Nordberg did not track the language of Sec. 1292(b), a careful reading of his order makes it sufficiently clear that he intended to certify his ruling and that he actually believed the statutory requirements of Sec. 1292(b) were satisfied. Consequently, we hold that this appeal is properly before us. However, we strongly recommend that from now on a district court in this circuit use care when certifying interlocutory appeals under Sec. 1292(b) to state in writing that it is of the opinion that its order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal ... may materially advance the ultimate termination of the litigation ...." 28 U.S.C. Sec. 1292(b).
 
 III.
 
 9
 The standard of review when a district court denies class certification is whether the district court abused its discretion. Simer v. Rios, 661 F.2d 655, 668 (7th Cir.1981), cert. denied, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); Adashunas v. Negley, 626 F.2d 600, 605 (7th Cir.1980). Because Judge Nordberg's decision to decertify the plaintiff class is equivalent to a decision to deny class certification in the first instance, we hold that the same standard governs our review of this case. Applying that standard, we cannot say that the district court abused its discretion in decertifying the plaintiff class.
 
 IV.
 
 10
 While we express no opinion on the merits of the plaintiffs' underlying cause of action, some discussion of their antitrust claim is essential to determine whether the district court abused its discretion in decertifying the plaintiff class.
 
 
 11
 A unilateral refusal by Joyce to deal with distributors who do not follow its price lists is not a violation of the antitrust laws. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). A class-wide violation occurs only if there is an agreement between Joyce and each of its distributors to fix the resale price of Joyce products. 15 U.S.C. Secs. 1, 15; Colgate, 250 U.S. at 306-07, 39 S.Ct. at 467-468. Proof that each distributor was party to a resale price agreement is crucial to the plaintiffs' case, because a class member "is not entitled to recover unless [Joyce] engaged in wrongful conduct with respect to him." Abrams v. Interco Inc., 719 F.2d 23 at 29 (2d Cir.1983). Cf. O'Connell v. Citrus Bowl, Inc., No. 81 CV 4054, Memorandum of Decision and Order, at 12 (E.D.N.Y. Sept. 9, 1983).
 
 
 12
 Resale price agreements are most easily proved if they are incorporated in a written document (e.g., a distributorship agreement). See United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 721, 64 S.Ct. 805, 812, 88 L.Ed. 1024 (1944); Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 404, 31 S.Ct. 376, 383, 55 L.Ed. 502 (1911). The plaintiffs concede, however, that no writing exists in this case from which some 347 resale price agreements might be inferred. Instead, the plaintiffs must prove the resale price agreements by showing that Joyce undertook actions, in excess of those lawfully permitted under Colgate, which caused each distributor to "unwillingly compl[y]" with Joyce's alleged resale price scheme.[2] Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 142, 88 S.Ct. 1981, 1986, 20 L.Ed.2d 982 (1968); Albrecht v. Herald Co., 390 U.S. 145, 150 n. 6, 88 S.Ct. 869, 872 n. 6, 19 L.Ed.2d 998 (1968); United States v. Parke, Davis & Co., 362 U.S. 29, 46-47, 80 S.Ct. 503, 513, 4 L.Ed.2d 505 (1960); In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 691 F.2d 1335, 1343 (9th Cir.1982) (hereinafter "In re Petroleum Products "). Absent a common method of proving both the class-wide scope of Joyce's illegal actions and each distributor's submission to the alleged pricing scheme, a class action would not be appropriate because "questions of law or fact common to the members of the class [would not] predominate over any questions affecting only individual members ...." Fed.R.Civ.P. 23(b)(3).
 
 
 13
 The plaintiffs contend that proof of a comprehensive policing policy by Joyce will suffice to demonstrate an antitrust violation with respect to each class member.[3] While it might be possible in some instances to establish a sufficiently general pattern of conduct from which a trier of fact could infer that all class members were subjected to illegal conduct, see Abrams, 719 F.2d at 29, the burden was on the plaintiff to convince the district court that such proof was possible in this case. Susman v. Lincoln American Corp., 561 F.2d 86, 90 (7th Cir.1977); Valentino v. Howlett, 528 F.2d 975, 978 (7th Cir.1976). After an extensive search of the record, we find nothing that would indicate precisely how the plaintiffs intended to accomplish this task. Indeed, the First Amended Complaint (as amended) does not even allege that each distributor was subjected to at least one of the alleged policing practices.
 
 
 14
 Moreover, we agree with the Second Circuit that "there is force" to the argument that this type of proof cannot be made on a class-wide basis. Abrams, 719 F.2d at 29. Without a written agreement, the requisite proof would almost certainly necessitate testimony by a number of distributors that they were policed. The number of distributors required to testify, however, might be quite large since proof that a distributor in Joppa, Illinois was policed, and thereby coerced into a resale price agreement, would not necessarily imply that a distributor in Lodi, Wisconsin was similarly coerced. As the number of distributors required to testify increases, there is also an increase in the possibility that individual questions of fact will predominate over common questions of fact. Of course, knowledge that Joyce had actually coerced some distributors might cause other distributors to comply without being directly subjected to Joyce's alleged policing practices. See, e.g., In re Clark Oil and Refining Corp. Antitrust Litigation, 1974 Trade Cas. (CCH) p 74,880, at 95,972 (E.D.Wis.1974). The plaintiffs would still have to demonstrate to the district court, however, that each class member's knowledge of the actual coercion of other distributors could be proved on a class-wide basis.
 
 
 15
 The best that plaintiffs can do is make such self-serving statements as the following: "the facts of this case allow ... proof to be made on a classwide basis"; "there can be no question but that those practices were classwide"; and "[the Joyce policing policy] was easily the most comprehensive ... program we have ever encountered." While we do not hold that individual questions of fact will always predominate in resale price cases requiring proof of class-wide coercion, the plaintiffs have failed to sustain their burden of proving that common questions of fact predominate in this case. Absent a satisfactory explanation of how the plaintiffs intend to prove the alleged comprehensive policing policy, we cannot say that the district court abused its discretion in decertifying the plaintiff class. In re Petroleum Products, 691 F.2d at 1343.
 
 V.
 
 16
 For the reasons set forth above, the decision of the district court is affirmed.
 
 
 
 *
 The Honorable Edward R. Neaher, Senior District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 In some rare instances, a court of appeals may treat a case as an interlocutory appeal even though the district court has made no Sec. 1292(b) certification. See, e.g., Gillespie v. United States, 379 U.S. 148, 154, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964) (where district court's order is marginally final, court of appeals may treat it as a Sec. 1292(b) interlocutory appeal even without certification); Nelson v. Heyne, 491 F.2d 352, 354 n. 2 (7th Cir.1974) (same), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974)
 
 
 [2]
 We find no merit to the plaintiffs' claim that they can prove, or that they have even alleged, a uniform, oral distributorship agreement that contains the illegal resale price agreement. A careful examination of paragraph twelve of the plaintiffs' First Amended Complaint (as amended), which they vigorously asserted in their briefs and at oral argument alleged a "uniform agreement," shows they alleged only that each class member "entered into an exclusive distributorship agreement" with Joyce (emphasis supplied). "Uniform" and "exclusive" are not synonymous. Even assuming an allegation of uniform, oral agreements, we believe proof of these agreements would involve individual questions of fact. The terms of one oral agreement cannot be used to imply the terms of other oral agreements. Oral agreements by their very nature are susceptible to wide variation in terms
 
 
 [3]
 The alleged coercive activities included instituting a credit sales system using "charge tickets," randomly accompanying distributors on their rounds, interviewing distributors' customers concerning the prices charged them, reviewing customers' records, and threatening to terminate distributors who refused to follow the price lists