TAYLOR WOODROW PLC f/k/a
Taylor Woodrow Limited,
Plaintiff,

v.

Bernice BLITMAN and Nathan Blitman,
as Co-Personal Representatives under
the Last Will and Testament of Charles
H. Blitman, deceased, and Howard N.
Blitman, Defendants.

No. 83 Civ. 6899 (LFM).

United States District Court,
S.D. New York.

March 5, 1985.

Lowenthal, Landau, Fischer & Ziegler, P.C. by Lawrence L. Ginsburg, New York City, for plaintiff.

Spengler Carlson Gubar Brodsky & Frischling by Clinton W. Walker, New York City, for defendant Howard N. Blitman.

## OPINION

MacMAHON, District Judge.

Plaintiff moves, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment against defendant Howard N. Blitman.

In 1968, plaintiff Taylor Woodrow plc. owned 50% of the common stock of Blitman Construction Company ("BCC"), and defendants Charles and Howard Blitman owned the remaining 50% of BCC's com-

mon stock. In November 1968, plaintiff provided a $1 million letter of credit to Travelers Indemnity Company ("Travelers"), issued by European American Banking Corporation ("EAB"), as security for performance bonds issued by Travelers on behalf of BCC. Shortly thereafter, defendants agreed to indemnify plaintiff for one-half of any sum plaintiff paid under the letter of credit.[1]

In April 1981, one of BCC's subcontractors on the Albee Mall project, Metropolitan Steel Industries, Inc. ("Metropolitan Steel"), commenced an action in the United States District Court for the Eastern District of New York against Travelers for approximately $333,500 based on a performance bond Travelers issued on behalf of BCC. The following November, Howard Blitman resigned as president of BCC. Six months later, in June 1983, Travelers agreed to settle Metropolitan Steel's suit out of court. In exchange for dismissal of the suit, Travelers allegedly paid Metropolitan Steel $325,000. On September 19, 1983, plaintiff filed the instant action against defendants for $162,000 (one-half of the amount allegedly paid out under the letter of credit) based on the indemnification agreement.

In April 1984, plaintiff moved before us for an order striking defendants' second and third affirmative defenses and for summary judgment, and defendants cross-moved for summary judgment. On July 13, 1984, by Memorandum and Order, we granted plaintiff's motion to strike the affirmative defenses but found that the following issues of material fact precluded summary judgment: (1) proof of the chain of payment extending to Metropolitan Steel from plaintiff; and (2) proof that the sum paid to settle the Metropolitan Steel claim was reasonable and negotiated in good faith.

---

**1.** The relevant portion of the indemnification agreement provides:

The Indemnitors [Charles and Howard Blitman] hereby agree with the party of the first part [plaintiff] that they will pay and make contribution in respect of any sum or sums paid under the Irrevocable Letter of Credit to

the extent of one-half of such sum or sums so paid together with one-half of the cost to the party of the first part, under Bank of England regulations on remission of such sums to European-American Banking Corporation, issuer of the Irrevocable Letter of Credit, copy of which is attached hereto.

Plaintiff contends that the instant summary judgment motion is proper because it now has documentary evidence and deposition testimony establishing the chain of the alleged settlement payment of $325,000 by plaintiff to Metropolitan Steel and the reasonableness of that amount. *See Home Indem. Co. v. Famularo*, 530 F.Supp. 797 (D.Colo.1982).

■ The contemplated method of payment under the indemnification agreement was as follows: Metropolitan Steel, the underlying claimant, was to be paid by Travelers, which was to be reimbursed by EAB under the letter of credit, which would debit the account maintained with EAB by Midland Bank, Ltd., which was in turn to be reimbursed by plaintiff. Plaintiff has submitted adequate documentary evidence tracing the chain of the $325,000 settlement payment extending from plaintiff to Metropolitan Steel.[2] Moreover, defendant, in his answering papers, does not challenge any of plaintiff's statements of fact as to this chain of payment.

We conclude that there is no genuine issue as to the chain of payment which must exist to find defendant liable for indemnification.

The remaining question for us is whether the settlement amount was reasonable and negotiated in good faith. In our July 13, 1984 Memorandum and Order, we noted that:

[B]ecause defendant was notified and failed affirmatively to intervene or to undertake a defense, defendant cannot now attack the validity of the Metropolitan Steel claim against Travelers. *Feuer v. Menkes Feuer, Inc.* [8 App.Div.2d 294,

187 N.Y.S.2d 116 (1st Dept.1959) ]; *Whitaker v. Equitable Laundry Machine Corp.*, [131 Misc. 505] 227 N.Y.S. 233, 234 (Sup.Ct.1928), *aff'd*, [223 App.Div. 824] 228 N.Y.S. 922 (1st Dept.1928); *see also* 28 N.Y.Jur. Indemnity §§ 27, 32. Therefore, plaintiff need not establish that Travelers would have been liable and that there were no good defenses to liability or that settlement was the only reasonable course. *Id.*

Nevertheless, even where the indemnitor is notified of the claim giving rise to the indemnitee's liability, the indemnitor must establish that the sum paid to settle the claim out of court was reasonable and negotiated in good faith. *Delaware & H.R. Corp. v. Adirondack Farm Co-op Exchange, Inc.*, [33 App.Div.2d 962] 306 N.Y.S.2d 1002, 1005 (3d Dept.1970); *Feuer v. Menkes Feuer, Inc., supra*, [187 N.Y.S.2d] at 121; *see also* 28 N.Y.Jur. Indemnity § 32.

Plaintiff now contends that defendant admitted, no later than March 1981, that a settlement in the range of $260,000 to $280,000 was reasonable. Given this admission, plaintiff submits that proof of the reasonableness of the settlement is merely a question of arithmetic. Application of the statutory interest rate on a judgment to the principal amount of $260,000 yields additional interest totalling $52,270, for a total of principal plus interest of $312,270 as of the actual settlement date. This amount does not take into account any costs or attorney's fees saved by reason of the settlement.

The ultimate decision to settle the Metropolitan Steel claim was made by Richard

---

**2.** Plaintiff submitted the following documentary evidence establishing the chain of payment: (1) a letter dated September 6, 1984, from Travelers to plaintiff's counsel, confirming payment of $325,000 to Metropolitan Steel by check dated June 27, 1983; (2) a release dated June 14, 1983, executed by Metropolitan Steel, releasing Travelers from liability arising out of the construction of the Albee Mall project; (3) a Stipulation and Order of Dismissal dated June 28, 1983, signed by Hon. Henry Bramwell, United States District Judge for the Eastern District of New York, and by counsel for both parties, settling

the action between Metropolitan Steel and Travelers; (4) a letter dated June 24, 1983, from Travelers to European American Banking Corporation ("EAB"), and a sight draft directing payment by EAB to Travelers, in the amount of $325,000; (5) a debit advice dated June 24, 1983, from EAB to Midland Bank, Ltd. ("Midland Bank"), in the amount of $325,000, and acknowledgment of that debit by Midland Bank; and (6) a debit advice of Midland Bank, dated July 5, 1983, in the amount of $325,000, and an accompanying letter from Midland Bank setting forth the substance of the debit advice.

Johnson, president of BCC. He relied on recommendations of counsel and information relayed to him by Robert Posner, a former vice president of BCC. Specifically, Johnson based his decision on the following factors: (1) the outstanding undisputed construction costs owed Metropolitan Steel were approximately $230,000; (2) Metropolitan Steel claimed that it was owed between $30,000 and $40,000 in "change orders;" (3) the value of the work performed by Metropolitan Steel which was still unpaid was approximately $30,000; (4) Metropolitan Steel had asserted additional claims totalling $100,000 to which there was some exposure; (5) the counterclaims asserted against Metropolitan Steel were essentially worthless; and (6) potential litigation costs were between $50,000 and $60,000.

In opposing the instant motion for summary judgment, defendant makes three arguments on the good faith and reasonableness of the settlement. First, he argues that settlement negotiations were not conducted in good faith because Johnson did not make a sufficient investigation of the merits of Metropolitan Steel's claims. In essence, defendant alleges that by relying on Posner's advice, rather than seeking out the advice of individuals who had first-hand knowledge of the claims, Johnson disregarded the facts and breached his duty. Defendant also alleges that Albee Mall Associates ("Albee Mall"), the owner of the project, is ultimately liable to Metropolitan Steel, and, thus, plaintiff should have filed a third-party complaint against Albee Mall in the Metropolitan Steel suit.

■ Johnson's failure to question persons directly involved in the Albee Mall project does not establish that his reliance on Posner's information was improper. Defendant has not introduced any evidence indicating that that information was erroneous or otherwise unreliable. In the absence of such countervailing evidence, we find that Johnson's reliance was in good faith. *See, e.g., Modern Home Institute, Inc. v. Hartford Acc. & Indem. Co.,* 513 F.2d 102, 110 (2d Cir.1975).

■ We now turn to the issue of the third-party complaint against Albee Mall. At the outset of the Metropolitan Steel litigation, BCC, Travelers and Albee Mall were all represented by the same law firm. Cognizant of possible conflicts of interests, the parties agreed to defer any disputes among themselves until the conclusion of the litigation. However, after a settlement "agreement" between BCC and Albee Mall broke down, BCC commenced an action against Albee Mall in the Supreme Court of the State of New York, New York County, which is still pending. Thereafter, the law firm previously representing Travelers in the Metropolitan Steel claim was permitted to withdraw. Travelers then moved unsuccessfully on the eve of trial to assert a third-party complaint against Albee Mall in the Metropolitan Steel action. In view of the foregoing fact, we find that plaintiff's decision not to implead Albee Mall does not reflect bad faith.

Defendant's second argument is that the amount of the settlement was not reasonable. He contends that his earlier proposal of between $260,000 and $280,000 is in no way an admission of the reasonableness of the present settlement of $325,000. His proposal was that Albee Mall, not BCC, be liable for the full amount of the settlement. Furthermore, the ultimate settlement exceeded his proposal by $45,000 to $65,000 and failed to take into account "substantial legal fees" already expended and "substantial 'charge backs'" owed to BCC by Metropolitan Steel.

■ The issue of Albee Mall's ultimate liability and the outcome of the pending state action is neither before us nor relevant to the instant action. The question here is limited to the reasonableness of the settlement between BCC and Metropolitan Steel. Plaintiff has presented a clear factual showing justifying its good faith in making the particular settlement payments and the reasonableness of the sums paid. Under the circumstances, defendant is bound to come forward with proof of evidentiary facts showing the existence of a genuine and substantial issue as to the good faith and reasonableness of these

payments. *Gray Mfg. Co. v. Pathe Industries, Inc.*, 33 A.D.2d 739, 305 N.Y.S.2d 794 (1st Dept.1969).

Defendant's bare assertions that the $325,000 amount did not take into account "substantial legal fees" and "substantial 'charge backs'" are not sufficient to raise a material issue of fact. Furthermore, the fact that defendant's proposed settlement, reached in March 1981, was exceeded by $45,000 to $65,000 in plaintiff's final settlement agreement in June 1983, does not, in itself, establish that the final settlement was unreasonable.

██ It is the intrinsic nature of settlements that no party will completely fulfill its absolute goals but that, after considering all relevant circumstances, the parties resolve to terminate litigation on the basis of a reasonable compromise. *Stull v. Baker*, 410 F.Supp. 1326 (S.D.N.Y.1976). The Federal Rules of Civil Procedure do not preclude a defendant from offering a plaintiff more than could possibly be obtained through litigation in order to avoid the time and costs of litigation. *Abrams v. Interco Inc.*, 719 F.2d 23 (2d Cir.1983). We are not required to substitute our own business judgment for that of plaintiff and its counsel but need only determine whether the settlement is fair and reasonable. Taking into account that under a settlement no definitive judgment is required with respect to damages, we conclude that the settlement reached here was both reasonable and fair.

██ Defendant's final argument is that the entry of summary judgment against him is improper because a question of fact remains as to whether he is liable for 50% of the settlement or for 25%, the balance being owed by his co-defendant, Charles Blitman. Howard Blitman and Charles Blitman both entered into the indemnification agreement,[3] and both were named in this action and served with process.

---

**3.** *See* footnote 1, *supra*.

**4.** It should also be noted that New York law provides that upon the death of a joint obligor in contract, his estate shall be bound jointly and severally with the surviving obligor. N.Y.Gen-

The New York Court of Appeals has stated that:

It is a general presumption of law that, when two or more persons undertake an obligation, they undertake jointly; words of severance being necessary to overcome this primary presumption.

*United States Printing & Lithograph Co. v. Powers*, 233 N.Y. 143, 152, 135 N.E. 225, 227 (1922). Moreover, it is the law of New York that an obligee may proceed against either joint obligor and that a judgment against one shall not discharge the other. N.Y.General Obligations Law § 15–102 (McKinney 1978); N.Y.Civil Practice Law and Rules § 1501 (McKinney 1976).[4]

With due consideration for defendant's arguments and contentions, we conclude that he has failed to show a genuine and substantial issue of fact bearing upon the good faith of plaintiff and the reasonableness of the sum sought to be recovered.

Accordingly, we grant plaintiff's motion for summary judgment against defendant Howard Blitman for the relief demanded in the complaint. SO ORDERED.

eral Obligations Law § 15–106 (McKinney 1978). Here, plaintiff is proceeding against Howard Blitman and the estate of Charles Blitman.